# 22-2987

## United States Court of Appeals

*for the*

## Second Circuit

BRETT CHRISTIAN, FIREARMS POLICY COALITION, INC,
AND SECOND AMENDMENT FOUNDATION

*Plaintiffs-Appellees,*

– v. –

STEVEN A. NIGRELLI,

*Defendant-Appellant,*

JOHN J. FLYNN,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK (No. 1:22-cv-00695)

## PLAINTIFFS-APPELLEES' RESPONSE TO
## DEFENDANT-APPELLANT'S MOTION FOR A STAY PENDING APPEAL

Nicolas J. Rotsko
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203-2887
(716) 847-5467
NRotsko@phillipslytle.com

David H. Thompson
Peter A. Patterson
John W. Tienken
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
(202) 220-9600
dthompson@cooperkirk.com

*Attorneys for Plaintiffs-Appellees*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION .................................................................................1

FACTS .................................................................................................3

   I.   New York's Anti-Carry Presumption. ..........................................3

   II.   Procedural History.......................................................................4

ARGUMENT ........................................................................................5

   I.   Plaintiffs Have Standing. ............................................................6

   II.   The Anti-Carry Presumption is unconstitutional......................10

       a.  Plaintiffs' proposed conduct is within the presumptive
            protection of the Second Amendment.............................................10

       b.  The Anti-Carry Presumption is not consistent with the historical
            tradition of firearms regulation in the United States. ......................12

           i.   Founding era evidence demonstrates a tradition of regulating
                 hunting. ...............................................................................12

           ii.   The Founding era is the relevant time period for historical
                 analysis...............................................................................17

           iii.   The State's anachronistic evidence is insufficient.................18

   III.   The equitable factors favor maintaining the preliminary injunction
            pending appeal. ........................................................................19

CONCLUSION ..................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                             **Page**

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) ...............................9, 10

*A.H. by & through Hester v. French*, 985 F.3d 165 (2d Cir. 2021)........................20

*Antonyuk v. Hochul*, 2022 WL 16744700
(N.D.N.Y Nov. 7, 2022)......................................................... 13, 15, 18

*Church of Scientology of California v. United States*, 506 U.S. 9 (1992) ...............9

*City of Boerne v. Flores*, 521 U.S. 507 (1997) .......................................21

*Cooper v. Aaron*, 358 U.S. 1 (1958)..................................................21

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................... 10, 11, 17

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011)...................................19, 20

*F.E.C. v. Cruz*, 142 S. Ct. 1638 (2022) .............................................7

*Libertarian Party of Connecticut v. Lamont,* 977 F.3d 173 (2d Cir. 2020) ..............5

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)...................................17, 19 ,21

*Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006)............................6

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111 (2022)................................1, 2, 10, 11, 12, 14, 18, 21

*Nken v. Holder*, 556 U.S. 418 (2009) ...............................................5

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018)..................................................5

*Rumsfeld v. FAIR*, 547 U.S. 47 (2006) ...................................................6

*Steffel v. Thompson*, 415 U.S. 452 (1974) .......................................7, 8, 9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...............................6, 7, 9

*Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017)........... 19, 21, 22

## Constitutions, Statutes and Legislative Materials

U.S. CONST. amend. II .................................................................10

U.S. CONST. amend. IV ................................................................10

N.Y. CONST. art. XIII, § 1 ............................................................21

42 U.S.C. § 1983....................................................................6

Senate Bill S51001 ........................................................................................1, 3

N.Y. PENAL LAW

§ 140.00(5) .........................................................................................2, 19
§ 140.17(2) .........................................................................................2, 19
§ 265.01-d(1) .......................................................................................1, 3
§ 265.01-d(2)(a)-(f).................................................................................3
§ 265.01-d(2)(g)......................................................................................3

## Other Authorities

*Governor Hochul Signs Landmark Legislation to Strengthen Gun Laws and
    Bolster Restrictions on Concealed Carry Weapons in Response to Reckless
    Supreme Court Decision*, N.Y. GOV.'S PRESS OFFICE (July 1, 2022),
    https://on.ny.gov/3nXWrvA.........................................................................3, 4

Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World,
    the Critical Period for Historical Analogues Is when the Second Amendment
    Was Ratified in 1791, and not 1868 (working draft)*, Oct. 1, 2022, *available at*
    https://bit.ly/3CMSKjw.................................................................................17

**INTRODUCTION**

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court held that individuals have a constitutional right under the Second Amendment to carry firearms for self-defense outside the home. Shortly following *Bruen*, the State of New York enacted widespread prohibitions on carrying firearms in public. *See generally* Senate Bill S51001 ("S51001") (June 30, 2022, Extraordinary Session). In addition to many location-specific restrictions, New York established a novel and unprecedented presumption that bans the possession of firearms by ordinary, law-abiding New Yorkers—such as Appellee Brett Christian—on *all* private property in *all* parts of the State unless and until the owner or lessee of the property puts up "clear and conspicuous signage" allowing firearms "or has otherwise given express consent." N.Y. PENAL LAW § 265.01-d(1) ("Anti-Carry Presumption"). This is a state-imposed default ban on exercising Second Amendment rights "outside the home." *Bruen*, 142 S. Ct. at 2122.

The Anti-Carry Presumption is unconstitutional, and the district court properly enjoined Defendants from enforcing it. In doing so, the court correctly applied the governing standard set forth in *Bruen*. First, the Second Amendment's text "presumptively protects" Plaintiffs' "proposed course of conduct." *Bruen*, 142 S. Ct. at 2126, 2134. Plaintiffs are Americans who desire to carry handguns. The Second Amendment's plain text protects that conduct.

1

Because the text covers Plaintiffs' proposed conduct, the State must "affirmatively prove" that the Anti-Carry Presumption "is consistent with this Nation's historical tradition of firearm regulation" with "relevantly similar" restrictions at the Founding. *Id.* at 2127, 2132, 2135. The State has not met that burden. This is hardly surprising. New York's own briefing in this Court admits that the default rule in this State "has long been" the opposite of the Anti-Carry Presumption, namely private property owners could *independently* decide whether invitees with firearms should be given "direction to leave." *See Christian v. Nigrelli*, No. 22-2987, Appellant's Mot. to Stay, Doc. 18 at 13 n.5 (Nov. 28, 2022) ("State Br.") (citing N.Y. PENAL LAW § 140.17(2)) (emphasis added); *see also* N.Y. PENAL LAW § 140.00(5). Now, the State has interposed itself in this decision, deciding for all property owners in the State to ban the exercise of a constitutional right outside the home, unless property owners give direction to enter. There is no precedent of any kind for the State's rule in this State or any other.

Given Plaintiffs' substantial likelihood of success, the stay pending appeal that the State seeks is not warranted. Moreover, the equities favor maintaining the preliminary injunction. The State's motion for a stay should be denied.

## FACTS

### I.        New York's Anti-Carry Presumption.

New York responded to *Bruen* by enacting Senate Bill S51001. Among other things, S51001 implemented expansive new criminal laws that ban carry of firearms in so-called "restricted locations," even for those who lawfully obtain a license under the State's updated licensing scheme. Under S51001, all private property in the State is "a restricted location" where public carry of firearms for self-defense is unlawful—unless "the owner or lessee of such property" has "permitted" "possession by clear and conspicuous signage indicating that the carrying of firearms, rifles, or shotguns on their property is permitted or has otherwise given express consent." N.Y. PENAL LAW § 265.01-d(1). If an otherwise law-abiding, licensed firearm owner possesses a firearm and "enters into or remains on or in private property" where the owner or lessee has not put up the requisite conspicuous sign or given express consent, he or she has committed a Class E Felony. *Id.* This default ban on carrying for self-defense outside the home does not apply to police officers, state-designated peace officers, and the like. *Id.* at § 265.01-d(2)(a)-(f). It also does not apply to "persons lawfully engaged in hunting activity." *Id.* at § 265.01-d(2)(g).

As explained by New York's Governor, "[i]ndividuals who carry concealed weapons" in restricted locations "will face criminal penalties." *Governor Hochul*

3

*Signs Landmark Legislation to Strengthen Gun Laws and Bolster Restrictions on Concealed Carry Weapons in Response to Reckless Supreme Court Decision*, N.Y. GOV.'S PRESS OFFICE (July 1, 2022), https://on.ny.gov/3nXWrvA. Defendant Nigrelli "explained that, in New York State, troopers 'are standing ready' to ensure that 'all laws are enforced.' He emphasized that the troopers will have 'zero tolerance,' and it is an 'easy message' that he does not need to 'spell it out more than this.'" Decision & Order, 1:22-cv-00695[1], Doc. 49, at 9 (Nov. 22, 2022) ("Op."). The State's establishment of all private property in the State as a place where carrying firearms is banned by default took effect on September 1, 2022.

## II.    Procedural History.

Plaintiffs filed this suit on September 13, 2022. Appellant's Mot. to Stay, Ex. A, *Christian v. Nigrelli*, No. 22-2987, Doc. 18, at 33 (Nov. 28, 2022). On September 28, Plaintiffs filed a motion for a preliminary injunction, which as relevant here, sought an order enjoining enforcement of the Anti-Carry Presumption with respect to property open to the public. *Id.* at 34. Following briefing and a hearing, the district court entered a preliminary injunction. *Id.* at 36–37. *See* Op. 26.[2]

---

[1] "1:22-cv-00695" refers to the district court docket below.

[2] Plaintiffs' motion also sought to preliminarily enjoin S51001's designation of public parks and public transportation as "sensitive locations." The district court sought additional briefing with respect to those two restrictions and reserved decision for a subsequent opinion. Op. 2 n.1, 27.

Acting Commissioner Nigrelli filed a Notice of Appeal and requested a stay pending appeal.

## ARGUMENT

When considering whether to issue a stay pending appeal, this Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).

The district court correctly held that no heightened standard is applicable to Plaintiffs' motion for a preliminary injunction because Plaintiffs sought and obtained a prohibitory injunction to return affairs to the status quo ante—"the last actual, peaceable uncontested status which preceded the pending controversy." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). The status quo is the Second Amendment and the long history, prior to S51001, of private property owners *independently* deciding for themselves whether to permit invitees to carry firearms. *Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173 (2d Cir. 2020), is not to the contrary as the plaintiffs there sought the positive of act of "directing the Governor to place their candidates on the ballot," *id*. at 177. Here, Plaintiffs seek an order that the State *not* act and *not* infringe their Second

5

Amendment rights by *not* enforcing the Anti-Carry Presumption. An order enjoining future enforcement "clearly prohibits, rather than compels, government action." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006). In all events, Plaintiffs meet any heightened standard.

## I.    Plaintiffs have standing.[3]

To establish standing, Plaintiffs must establish a "personal stake in the outcome of the controversy" by demonstrating an injury in fact fairly traceable to the challenged conduct of Defendants that will be redressed by a favorable decision of this Court. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted). Plaintiff Christian has demonstrated that here. As he stated in his declaration and deposition testimony, he previously and with regularity carried for self-defense at establishments open to the public, Deposition of Brett Christian, 1:22-cv-00695, Doc. 46-2, at 94:22–95:8 (November 16, 2022) ("Christian Dep."). Christian would visit these and other establishments again while carrying a firearm for self-defense, but for the enactment and enforcement of S51001. Christian Dep. 126:12–129:24; Decl. of Brett Christian, 1:22-cv-00695,

---

[3] The district court did not consider FPC's and SAF's standing because Christian has standing. *See Rumsfeld v. FAIR*, 547 U.S. 47, 53 n.2 (2006). Nevertheless, FPC and SAF both have demonstrated they have organizational standing, *see* 1:22-cv-00695, Doc. 46, Pls. Reply at 3. They also preserve the right to seek to overrule circuit precedent that an organization does not have standing to assert the rights of its members under 42 U.S.C. § 1983.

Doc. 19-4, ¶¶ 7–11 (Sept. 26, 2022) ("Christian Decl."). His injury is S51001's immediate and actual disarmament in these locations each and every instance that he visits them without his firearm or abstains from visiting altogether because of his diminished sense of personal safety. Christian Dep. 106:2–13; 130:19–23 (noting his carrying for self-defense "has been reduced to almost nonexistent"); Christian Decl. ¶12. For purposes of standing, this Court must assume that this immediate and actual disarmament unconstitutionally infringes Plaintiff Christian's Second Amendment rights. *See F.E.C. v. Cruz*, 142 S. Ct. 1638, 1647–48 (2022). This injury is fairly traceable to Defendants, and the district court's issuance of a preliminary injunction redresses this ongoing injury. The State's enforcement officials have made abundantly clear that this law *will be enforced* absent injunctive relief.

"When an individual is subject to" "threatened enforcement of a law," then "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List*, 573 U.S. at 158. Indeed, it is not even necessary for an individual to "first *expose* himself to actual arrest or prosecution to be entitled to challenge a statute that he claims *deters* the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459, (1974) (emphases added). Thus, in *Steffel*, the plaintiff had standing to challenge a criminal trespass statute that had caused him to *refrain* from engaging in certain handbilling activities that he believed were constitutionally protected: he "alleged … that … he had not

7

done so because of his concern that he … would be … arrested for violation of" the challenged law. 415 U.S. at 456. The same reasoning applies here: Plaintiff Christian has standing because he has refrained from carrying firearms in businesses open to the public only because of the very real prospect of arrest and prosecution should he do so, as demonstrated by Defendant Nigrelli's comments. In fact, Plaintiff Christian has exercised his constitutional right to carry only three times since S51001 took effect, compared to nearly every day before, due to the State's promise that S51001 would be vigorously enforced. *See* Christian Dep. 130:19–23.

The State argues that Christian's injuries "are attributable not to the challenged statute but to decisions made by property owners," and accordingly this Court should find that Christian lacks standing. State Br. 10. But the State's argument is wrong both as a matter of fact and a matter of law. To begin with, Christian testified at his deposition that prior to September 1, 2022, he would carry at places open to the public, including a local gas station (Delta Sonic) and a local hardware store (Valu Home Center). Christian Dep. 129:1–24. After September 1, 2022, he can no longer carry there. He attempted to go a local eatery "around the corner from [him]," which was silent on carrying. Christian Dep. 107:2–108:15. An employee said, "they are defaulting to what New York says," so he could not go in with his firearm. Christian Dep. 106:16–21; 107:2–108:17. To sum up, these businesses were silent before September 1. After September 1, they were silent still.

8

*See e.g.*, Christian Dep. 95:24; 110:17–24; 116:5–10. The *only* thing that changed is New York's law, which now bans carry in such circumstances. Christian's inability to carry in these places is thus plainly attributable to the State's Anti-Carry Presumption as a matter of fact.

As a matter of law, the involvement of a property owner in the invocation of an unconstitutional law is beside the point. After all, *Steffel* concerned a criminal trespass law, invoked by a private property owner to bar plaintiffs' actions. 415 U.S. at 454–56 (noting shopping center manager "called the police"). Yet the Supreme Court found the plaintiffs had standing to challenge the constitutionality of that law all the same. *Id*. at 475; *accord Susan B. Anthony List*, 573 U.S. at 159. That is because it is *the State*'s threatened enforcement that causes the unconstitutional injury. *Susan B. Anthony List*, 573 U.S. at 159. Finally, even though property owners retain the right to independently decide whether or not to permit firearms on their property, Christian's legal injuries are redressable. An injunction against the Anti-Carry Presumption provides complete relief from the State's enforcement of the unconstitutional law, and, at the very least, a partial remedy for those like Christian who seek to carry for self-defense in their day-to-day lives. *See Church of Scientology of California v. United States*, 506 U.S. 9, 13 (1992); *cf. Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) ("The aggrieved party need not

allege that he would have obtained the benefit but for the barrier in order to establish standing." (internal quotation marks omitted)).

## II. The Anti-Carry Presumption is unconstitutional.

### a. Plaintiffs' proposed conduct is within the presumptive protection of the Second Amendment.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *Bruen*, the Supreme Court articulated a framework for determining if firearms regulations are constitutional. It begins with the text. If the plaintiffs' proposed course of conduct falls within the Second Amendment's text, then plaintiffs are presumptively protected. *Bruen*, 142 S. Ct. at 2126. The Supreme Court has defined all of the key terms in *Heller* and *Bruen*. "The people" presumptively means "all Americans," "Arms" presumptively includes "all instruments that constitute bearable arms," and, most relevant here, to bear simply means to "carry." *Dist. of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008). Unlike other Amendments, *see* U.S. CONST. amend. IV, "[n]othing in the Second Amendment's text draws a home/public distinction," *Bruen*, 142 S. Ct. at 2134—or for that matter, any locational distinction at all.

No different textual analysis is required in this appeal. That is why the district court held the plain text of the Second Amendment presumptively protects Plaintiffs' here. Op. 13–14. Christian is an American who seeks to carry bearable arms. As in

*Bruen*, these undisputed facts end the textual inquiry; the inquiry becomes historical, for which the State bears both the burden of persuasion and production.

The State argues that the district court erred in ending the textual inquiry because the Second Amendment is "not absolute 'even at the property line of others." State Br. 12. But the State's briefing takes aim at an argument no one is making. Plaintiffs do not argue the Second Amendment is "absolute," instead Plaintiffs agree with the Supreme Court that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 626)). But central to the Supreme Court's holding and the district court's correct analysis is the fact that the *limits* on the Second Amendment right do not stem from the text, but from "scrutinizing … history and tradition." *Id*. The State's suggestion otherwise is foreclosed by *Bruen.*

Moreover, Plaintiffs do not challenge the ability of private property owners to *independently* determine that they will bar invitees from carrying firearms. Instead, Plaintiffs challenge the *State*'s action to "affirmatively exercise[] the right to exclude concealed carriers *on behalf of all private property owners*, thereby creating a *vast default exclusion zone across the State.*" Op. 20 n.20. By presuming to make property owners' decisions for them and place a definitive thumb on the scale against the exercise of constitutional rights on all property open to the public throughout the State, unless the property owners expressly state otherwise, the State has regulated

11

Plaintiffs' ability to "carry" arms. *Bruen* left no room for doubt: when the State seeks to establish where "one [can] not carry arms," the State must "affirmatively prove" that such restrictions are consistent with the American tradition of firearms regulation. 142 S. Ct. at 2127, 2156.

> **b. The Anti-Carry Presumption is not consistent with the historical tradition of firearms regulation in the United States.**

The State faults the district court for "arbitrarily dismissing the State's showing of historical analogues" and, by doing so, "eliminat[ing] the possibility of supporting a law through historical analogues." State Br. 16. But the fault lies not with the district court but with the Anti-Carry Presumption itself. The district court did not "eliminate[] the possibility" of supporting the Anti-Carry Presumption, history does.

> **i. Founding era evidence demonstrates a tradition of regulating hunting.**

The State presents five statutes from the colonial era as purported historical analogues to the Anti-Carry Presumption. These fall well short of "affirmatively prov[ing]" the Anti-Carry Presumption is consistent with the American tradition of regulating firearms. To assess these analogues, *Bruen* instructs this Court to consider at least two metrics: how the historical regulations the State relies on burdened the right to bear arms and why they did so. *Bruen*, 142 S. Ct. at 2133. The State's analogues fail both tests.

First, how these Founding era statutes burdened the right to carry firearms is meaningfully different. Consider the 1715 Maryland statute cited by the State. This restriction applied only to those "convicted" of certain crimes, were of "evil fame," "a vagrant," or a "dissolute liver." *See* 1715 MD. LAWS 90, 1:22-cv-00695, Doc. 33-2 at 4. This was not a broad prohibition on ordinary, *law-abiding* citizens. In addition to Maryland's 1715 statute, Pennsylvania's 1721 statute, New Jersey's 1722 statute, and New York's 1763 statute only applied on enclosed land suitable for hunting. *See* 1721 PA. LAWS 254, 1:22-cv-00695, Doc. 33-2 at 8–9 (applying to carrying a gun or hunting "on the improved or *inclosed lands of any plantation* other than his own"); 1722 N.J. LAWS 99, 1:22-cv-00695, Doc. 33-2 at 15 (applying to "carry[ing] any Gun, or hunt[ing] on the improved or *inclosed Lands in any Plantation*"); 1763 N.Y. LAWS 441, 1:22-cv-00695, Doc. 33-2 at 19–20 (applying to "carry[ing], shoot[ing], or discharg[ing] any Musket, Fowling-Piece, or other Fire-arm … into, upon, or through any Orchard, Garden, Cornfield, or other inclosed Land whatever."); *see also Antonyuk v. Hochul*, 2022 WL 16744700, at *79 (N.D.N.Y. Nov. 7, 2022) ("*Antonyuk III*"). These were not broad prohibitions on carrying firearms on all private property in all parts of the respective colony. Notably, these do not appear to have applied to other types of private property such as shops, taverns, inns, warehouses, stables, barns, outhouses, or market buildings. This leaves the State with a single Founding Era law that on its face appears to impose a burden beyond

13

private property suitable for hunting. *See* 1771 N.J. LAWS 344, 1:22-cv-00695, Doc. 33-2 at 23 (applying to "Lands not his own").[4] But a single statute cannot establish a tradition of acceptable firearm regulation. *See Bruen*, 142 S. Ct. at 2153. And it is not clear that "Lands," in any event, would extend to a business open to the public.

Further, because the relevant inquiry is an assessment of the tradition of American firearm regulation, it is important to also consider how *other* colonies and early States contemporaneously regulated the carrying of firearms on private property during the Founding era. Other statutes underline that, if there was any widespread tradition of carry prohibitions on private property during the Founding, these were *limited* to hunting activity. *See, e.g.,* THE PUBLIC LAWS OF SOUTH CAROLINA 276 (1790), 1:22-cv-00695, Doc. 46-3 at 16; ACTS AND LAWS OF THE STATE OF CONNECTICUT 37 (1784), 1:22-cv-00695, Doc. 46-3 at 21; "Hunting," A MANUAL OF THE LAWS OF NORTH CAROLINA 234–236 (1814), 1:22-cv-00695, Doc. 46-3 at 24–26; DIGEST OF THE LAWS OF GEORGIA 428 (1800), 1:22-cv-00695, Doc. 46-3 at 428. Additionally, at least one Founding Era law imposed an opposite burden than the one imposed by the Anti-Carry Presumption. In North Carolina, the property owner had to post signage *banning* hunting for the hunting restriction to apply. S*ee* A MANUAL OF THE LAWS OF NORTH CAROLINA, *supra*, at 236.

---

[4] The State's exhibit appears to cut off the first page of New Jersey's 1771 statute, which is available on page 343 at this link: https://bit.ly/3uz5I0p.

Given that the burden of these statutes fell primarily on hunting activity, it is plain to see *why* these laws were enacted: to regulate unlawful hunting. These were "'anti-poaching laws,' aimed at preventing hunters (sometimes only hunters who are convicted criminals) from taking game off of other people's lands (usually enclosed) without the owner's permission, which was a pernicious problem at the time." *Antonyuk III*, 2022 WL 16744700, at *79. Yet in a remarkable contrast with these Founding Era laws, the Anti-Carry Presumption does not apply to hunting *at all*.

The State argues that these were not motivated by hunting. State Br. 14–15. But this is an implausible reading as the enacting legislatures made plain why these statutes were enacted. The 1715 Maryland statute states that its carry prohibition on criminals and dissolute livers was "to prevent the abusing, hunting or worrying of any stock of hogs, cattle or horse, with dogs, or otherwise." 1715 MD. LAWS 90, 1:22-cv-00695, Doc. 33-2 at 4. Pennsylvania entitled its 1721 law, "An Act to Prevent the Killing of Deer Out of Season, And Against Carrying of Guns or Hunting By Persons Not Qualified." 1721 PA. LAWS 254, 1:22-cv-00695, Doc. 33-2 at 8. This was an omnibus hunting statute with sections concerning deer hunting season, selling "green deer skins," hunting on inclosed lands and hunting in the woods, and bird hunting in Philadelphia. *See* 1721 PA. LAWS 254–56, 1:22-cv-00695, Doc. 33-2 at 8–10. New Jersey's similarly titled 1722 law had similar sections and stated that its prohibition on carrying on inclosed land was to "Remedy … for the future" the

15

"divers abuses [that] have been committed, and great damages and inconveniencies arisen by Persons carrying of Guns *and presuming to hunt* on other Peoples land." 1722 N.J. LAWS 101, 1:22-cv-00695, Doc. 33-2 at 15 (emphasis added). Thus, colonial New Jersey tied its regulation to the carrying of firearms *while hunting*. New York's 1763 statute was "An Act to prevent hunting with Fire-Arms in the City of New York and the Liberties thereof." 1763 N.Y. LAWS 441, 1:22-cv-00695, Doc. 33-2 at 19. The legislature explained that "it has long been the practice of great Numbers of idle and disorderly persons in and about the City of New-York … to hunt with fire-arms, and to tread down the Grass, and Corn and other Grain standing and growing in the Fields and Inclosures there." *Id*. New York thus enacted its prohibition to "more effectually … punish and prevent such abuses," *i.e.*, to stop hunting and trampling of crops. 1763 N.Y. LAWS 442, 1:22-cv-00695, Doc. 33-2 at 20. Even New Jersey's 1771 law appears to have been motivated by hunting as the assembly stated it was enacted because "laws heretofore passed in this colony, for the preservation of deer and other game, and to prevent trespassing with guns, traps and dogs," *i.e.*, trespassing with hunting accessories, "have, by experience, been found insufficient." *See* 1771 N.J. LAWS 343–44, available at https://bit.ly/3uz5I0p. The State's argument that these are not hunting laws cannot be given any credence.

### ii. The Founding era is the relevant time period for historical analysis.

With the evidence from the Founding era's firearm regulations encompassing a much different burden for much different reasons than the State's Anti-Carry Presumption, the State is left pointing to three laws from the latter-half of the nineteenth century to find analogous restrictions. But this evidence comes too late. Because the scope of the Second Amendment was set in 1791, the Founding era is the appropriate period for this Court's historical analysis. *See generally* Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World, the Critical Period for Historical Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868 (working draft)*, (Oct. 1, 2022), *available at* https://bit.ly/3CMSKjw. This Court is bound by two lines of Supreme Court precedent, which mandate (1) that the scope of the Second Amendment with respect to the Federal Government is based on the public understanding in 1791, *see, e.g., Heller*, 554 U.S. at 634–35, and (2) that incorporated Bill of Rights provisions mean the same thing when applied to the States and the Federal Government, *see, e.g.*, *McDonald v. City of Chicago*, 561 U.S. 742, 765–66 (2010).

Accordingly, the State's lack of historical analogues from the Founding is dispositive evidence that the Anti-Carry Presumption is unconstitutional.

### iii. The State's anachronistic evidence is insufficient.

The State's additional evidence from Reconstruction does not help it meet its burden in any event. Since "the post-Civil War discussions of the right to keep and bear arms took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137 (internal quotation marks omitted). At most, the Supreme Court has looked to the Reconstruction Era to "confirm[] … what the Court thought had already been established" at the Founding. *Id*. And here, the Reconstruction era confirms that the Anti-Carry Presumption is unconstitutional. Two of the three additional statutes cited by the State appear to be hunting statutes, which are not "relevantly similar" to an Anti-Carry Presumption that *does not apply to hunting*. *Antonyuk III*, 2022 WL 16744700, at *79 (discussing the State's Oregon and Texas examples).[5] "Simply stated, the need to restrict fowling-piece-wielding poachers on fenced-in farms in 18th and 19th century America appears of little comparable analogousness to the need to restrict law-abiding responsible license holders in establishments that are open for business to the public today." *Id*., at *80.

---

[5] Even if Texas's law is not limited to or motivated by hunting, the Supreme Court has already held that Texas was an outlier at the time and "provide[s] little insight into how postbellum courts viewed the right to carry protected arms in public." *Bruen*, 142 S. Ct. at 2153.

The laws cited by the State also did not develop into an enduring tradition of regulation, as at present New York appears to be the *only* State to presumptively ban all typical law-abiding citizens from carrying firearms on private property open to the public. Moreover, New York's own briefing in this Court admits that the default rule in this State "has long been" the opposite of the Anti-Carry Presumption, namely private property owners could *independently* decide whether invitees with firearms should be given "direction to leave." State Br. 13 n.5 (citing N.Y. PENAL LAW § 140.17(2)); *see also* N.Y. PENAL LAW § 140.00(5). The Anti-Carry Presumption is not even consistent with a tradition *in* New York let alone at any relevant time in the United States.

## III.    The equitable factors favor maintaining the preliminary injunction pending appeal.

"Before issuing a stay, it is ultimately necessary … to balance the equities—to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (cleaned up). Here, the equities are squarely in favor of keeping the preliminary injunction in place. The Second Amendment "right to keep and bear arms" is a fundamental right, *McDonald*, 561 U.S. at 778, which protects the "intangible and unquantifiable interest" in personal protection and self-defense that "*cannot* be compensated by damages," *Ezell v. City of Chicago*, 651 F.3d 684, 699

19

(7th Cir. 2011) (emphasis added). The loss of Plaintiffs' rights is "irreparable" and cannot be measured in minutes to disarm. *Id*. at 699–700.

The State's equitable arguments to the contrary are unavailing. First, the State argues that there is a risk of public confusion because it will have to "communicate to the public and to private property owners that the default property rules have shifted." State Br. 17. Yet there is limited risk of confusion when the injunction would simply return New York to the default rule that persists throughout the country and has persisted throughout New York history. Any interest the State has in continuing to enforce its laws (and by extension in explaining the laws' requirements to the public) is "diminished when the laws at issue likely impinge a federal constitutional right." *A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021).

Second, the State argues public safety requires a stay to be granted. State Br. 18–19. But the State, bearing the burden of proving its entitlement to a stay, does not explain how its recently enacted Anti-Carry Presumption is so closely linked to public safety that the State for centuries lived without it. Similarly, the State has not demonstrated that "opportunistic, lawless individuals who might prey" on law-abiding citizens will have any "concern about the private property exclusion." Op. at 22. And, the Supreme Court has twice-rejected an argument that the vindication of Second Amendment rights should be treated differently because of an alleged

public safety rationale. The Supreme Court rejected such a Second-Amendment-is-different argument in *McDonald*, with the lead opinion noting that it is "not the only constitutional right that has controversial public safety implications." 561 U.S. at 783 (plurality). This statement was reiterated by a majority of the Court in *Bruen*. 142 S. Ct. at 2126 n.3. "All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *McDonald*, 561 U.S. at 783 (plurality).

Finally, the State says that it needs more time to defend its law. State Br. 19–20. But the State's law was enacted after *Bruen* in which the Supreme Court emphatically and repeatedly told States that they would need to marshal historical evidence to justify new firearms regulations. State political leaders who enacted S51001 all took oaths to follow the Constitution of the United States. *See* N.Y. CONST. art. XIII, § 1; *Cooper v. Aaron*, 358 U.S. 1, 18 (1958). If the State needed more time to justify the constitutionality of its new enactment, it should have taken more time before *making* that enactment. *Cf. City of Boerne v. Flores*, 521 U.S. 507, 530 (1997) (holding law outside the authority of Congress to enact, in part, because of slim legislative record justifying it).

There is no basis for this Court to issue any stay. But, alternatively, if the Court decides to issue a stay, any tailoring should be consistent with the approach taken by the Supreme Court in *Trump*, 137 S. Ct. 2080, and cited approvingly by the

State, State Br. 21–22. In *Trump*, the Supreme Court tailored its relief pending appeal by "leav[ing] the injunctions entered by the lower courts in place with respect to respondents and those similarly situated." *Id*. at 2087. By similarly situated, the Supreme Court meant those that suffered the same "concrete hardship." *Id*. at 2089.

## CONCLUSION

This Court should deny the State's motion for a stay pending appeal.

Respectfully submitted, this 8th day of December 2022.

Nicolas J. Rotsko
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203-2887
(716) 847-5467
(716) 852-6100 (fax)
NRotsko@phillipslytle.com

/s/ David H. Thompson
David H. Thompson
Peter A. Patterson
John W. Tienken
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
jtienken@cooperkirk.com

*Attorneys for Plaintiffs-Appellees*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

This brief complies with the type-volume limitations of Local Rule 32.1(a)(4)(A) because this brief contains 5,192 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.


Dated: December 8, 2022                     /s/David H. Thompson
                                            David H. Thompson

                                            *Attorney for Plaintiffs-Appellees*

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of December 2022, I filed the foregoing via the Court's CM/ECF appellate system, which will electronically notify all counsel requiring notice.

In addition, notice was provided via email to counsel at the following email address for the non-appellant district attorney defendant:

**Kenneth R. Kirby**
County of Erie
Department of Law
95 Franklin Street,
Suite 1634
Buffalo, NY 14202
kenneth.kirby@erie.gov
*Counsel for Defendant* Erie County District Attorney John J. Flynn


Dated: December 8, 2022                    /s/ David H. Thompson
                                                            David H. Thompson

                                                            *Attorney for Plaintiffs-Appellees*

24